IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Noah Manspeaker, et al., | ) | No. CV-10-01578-PHX-ROS |
| Plaintiffs, | ) | |
| vs. | ) | **ORDER** |
| Intel Corp., et al., | ) | |
| Defendants. | ) | |

Plaintiffs seek remand of this case to state court. Defendants oppose remand on the basis that Defendant ASM America, Inc. ("ASM") was fraudulently joined. For the following reasons, the motion to remand will be granted.

## BACKGROUND

**A. Allegations in the Amended Complaint**

Plaintiffs Chris Manspeaker and Christine Kennedy, as parents and natural guardians of Noah Manspeaker, and Mark and Julianne Shaman, as parents and natural guardians of ReAnne Shaman, filed suit in Maricopa County Superior Court against Intel Corporation ("Intel") and ASM. (Doc. 1-2 at 29). From July 2003 to June 2009, Plaintiff Chris Manspeaker worked at Intel manufacturing facilities in Albuquerque, New Mexico and Chandler, Arizona. (Doc. 1-2 at 30). From October 2004 to June 2009 Plaintiff Christine Kennedy worked at Intel manufacturing facilities in Chandler, Arizona. (Doc. 1-2 at 30).

1    Chris Manspeaker and Christine Kennedy are the parents of Noah Manspeaker who was born
2    on March 15, 2006.  From 1983 to 2009, Plaintiff Mark Shaman worked at Intel
3    manufacturing facilities in Hillsboro, Oregon and Chandler, Arizona.  From 1983 to 1991
4    Plaintiff Julianne Shaman worked at Intel's facility in Hillsboro, Oregon.  Mark and Julianne
5    Shaman are the parents of ReAnne Shaman who was born on March 9, 1998.  (Doc. 1-2 at
6    30).  Plaintiffs allege they were exposed to toxic chemicals and substances during the course
7    of their employment at Intel facilities.  The exposure to these substances allegedly resulted
8    in severe birth defects to Noah Manspeaker and ReAnne Shaman.

According to the complaint, ASM is a "manufacturer of thermal-chemical wafer processing tools and equipment, and at all relevant times was a supplier and servicer of wafer processing tools and equipment to Defendant Intel's Chandler, Arizona semiconductor facility, where Plaintiffs Chris Manspeaker, Christine Kenney and Mark Shaman worked." (Doc. 1-2 at 36). Plaintiffs allege this equipment was "negligently manufactured, distributed, sold, installed and serviced, and was otherwise defective, in that this equipment permitted the release of substantial levels of . . . hazardous chemicals and substances into the clean rooms and other areas where the [Plaintiffs] worked." (Doc. 1-2 at 36).

The complaint contains six counts, five of which are against both Intel and ASM. (Doc. 1-2 at 41-48). The first count against Intel and ASM is for general negligence. Plaintiffs believe both Intel and ASM "willfully, recklessly and negligently failed and refused to warn or advise [Plaintiffs] of the dangers and hazards" of the chemicals and substances at the Intel locations. (Doc. 1-2 at 41). Plaintiffs also bring a "strict products liability" claim against Intel and ASM. That count alleges Plaintiffs were harmed "[a]s a direct and proximate result of the defective, unsafe and unreasonably dangerous condition of . . . chemicals and substances, *and the aforesaid wafer processing equipment*." (Doc. 1-2 at 43) (emphasis added). The remaining claims against Intel and ASM are for "abnormally dangerous and ultra–hazardous activity," "willful and wanton misconduct," and "loss of services and consortium." (Doc. 1-2 at43-46).

**B. Defendants' View of Facts**

Defendants filed a notice of removal alleging the presence of diversity jurisdiction. According to Defendants, "ASM America, the only entity identified in [Plaintiffs' complaint] that is non-diverse from Plaintiffs, [was] not properly joined as a defendant." (Doc. 1 at 3). Defendants contend the joinder of ASM was fraudulent because ASM did not supply any equipment to an Intel location until *after* Plaintiffs suffered the alleged harm. (Doc. 1 at 5). According to Defendants, no ASM equipment was in Intel's Oregon or Arizona facilities until after the birth of ReAnne Shaman. (Doc. 1 at 6). And no ASM equipment was located in the same building at the Arizona location where Chris Manspeaker worked before the birth of Noah Manspeaker. (Doc. 1 at 7). ASM allegedly supplied equipment to a location named "Fab 12" at Intel's Arizona facility in late 2004. Chris Manspeaker did not start working at the Arizona facility until April 2005 and he worked in Fab 22 not Fab 12. Defendants claim there is no possibility Plaintiffs were exposed to ASM products prior to the birth of their children, meaning Plaintiffs cannot state a viable claim against ASM.

**C. Plaintiffs Affidavits in Support of Remand**[1]

In support of their motion to remand, Plaintiffs Mark Shaman and Chris Manspeaker submitted affidavits regarding their employment history. Mark Shaman worked "in various capacities and in various locations" during his twenty-six year career with Intel. (Doc. 25-1 at 2). He worked for approximately five years at a location in Oregon, approximately one year in Rio Rancho, New Mexico, and six months in San Jose, California. Mark Shaman transferred to Intel's location in Chandler, Arizona in 1996. From October 1996 to June 1997, his "job responsibilities required [him] to circulate among Intel's various facilities in Oregon, San Jose, California, Chandler, Arizona . . . and Rio Rancho, New Mexico." (Doc. 25-1 at 3). Responding to Defendants' assertion that ASM equipment was not installed at any location where Mark Shaman worked prior to 1998, Mark Shaman states "any equipment

---

[1] As set forth in more detail later, the Court can consider Plaintiffs' affidavits in support of their motion to remand.

- 3 -

1   that was installed at an Intel manufacturing facility . . . would first have had to have been
2   developed in one of Intel's development facilities in Oregon or in San Jose." Thus, Mark
3   Shaman believes the ASM equipment "present at Intel's [New Mexico] facility in 2001
4   would have been present in at least one of Intel's development facilities in Oregon or San
5   Jose" at a time when he worked in those facilities.

6   Chris Manspeaker's affidavit states he worked at Intel's location in Chandler, Arizona
7   "from approximately April 2005 through approximately August 2006." During this time, he
8   "mainly worked in Fab 22," but he was "required on an intermittent basis to spend time in
9   Fab 12, in part because a laboratory that [he] used was located there, and because many of
10  [his] colleagues were located there." (Doc. 25-2). Chris Manspeaker also "spent a
11  significant amount of time in the sub-fab area of Fab 12 and in a building adjacent to Fab 12
12  that "shares common air and ventilation with Fab 12." (Doc. 25-2 at 3).

## ANALYSIS

### I. Standard for Fraudulent Joinder

15  A defendant may remove a case involving a non-diverse co-defendant if that co-
16  defendant was fraudulently joined. A party is fraudulently joined when "the plaintiff fails
17  to state a cause of action against a resident defendant, and the failure is obvious according
18  to the settled rules of the state." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d
19  1203, 1206 (9th Cir. 2007) (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th
20  Cir.1987)). The removing defendant bears the burden of establishing fraudulent joinder by
21  clear and convincing evidence, *Hamilton Materials*, 494 F.3d at 1206, and all disputed
22  questions of fact must be resolved in Plaintiffs' favor. *Good v. Prudential Ins. Co. of Am.*,
23  5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).

24  In assessing a defendant's claim regarding fraudulent joinder, the Court may "pierce
25  the pleadings" and consider "summary judgment-type evidence." *Morris v. Princess*
26  *Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (citing *Cavallini v. State Farm Mutual*
27  *Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)). In doing so, Defendants believe the Court
28  must consider the affidavits they submitted but must ignore the affidavits submitted by

1  Plaintiffs. Defendants do not cite any authority establishing such a one-sided rule and there
2  is Ninth Circuit authority directly contrary. For example, in *Morris v. Princess Cruises, Inc.*,
3  the Ninth Circuit looked to affidavits submitted by the plaintiffs to determine whether they
4  could conceivably prevail on the claim which allegedly defeated diversity jurisdiction. 236
5  F.3d at 1068. Based on those affidavits, the Ninth Circuit concluded the non-diverse
6  defendant had been fraudulently joined. *Id.* The *Morris* court also cited approvingly to a
7  Fifth Circuit case where the plaintiff's affidavits were considered. 236 F.3d at 1068 (citing
8  *Cavallini*, 44 F.3d at 263). *See also McCabe*, 811 F.2d at 1340 (9th Cir. 1987) (considering
9  plaintiff's declaration in assessing fraudulent joinder); *Frontier Airlines, Inc. v. United Air*
10 *Lines, Inc.*, 758 F. Supp. 1399, 1405 (D. Colo. 1989) ("*Both* parties may submit affidavits
11 and/or deposition transcripts on a motion to remand.") (emphasis added). Given Defendants'
12 concession that the Court must go outside the pleadings to determine the issue of fraudulent
13 joinder, the Court will evaluate the evidence submitted by both sides.

14 **II.  Plaintiffs State a Claim Against ASM**

15        Having concluded the Court may consider the affidavits submitted by Plaintiffs, the
16 fraudulent joinder issue is easily resolved. Plaintiff Chris Manspeaker visited Fab 12 on a
17 regular basis when ASM equipment was indisputably present in that location. Accordingly,
18 Plaintiff Chris Manspeaker could have been exposed to ASM products and he can state a
19 valid claim against ASM. ASM was not fraudulently joined and complete diversity does not
20 exist.

21 **III. Fraudulent Misjoinder Does Not Apply**

22         Apparently realizing remand was likely, Defendants ask the Court to sever the claims
23 of the Shamans and the Manspeaker-Kennedys. (Doc. 41 at 15). Defendants contend the
24 concept of "fraudulent misjoinder" would allow the Court to sever and remand the
25 Manspeakers' claims but retain the Shamans' claims. *See Tapscott v. MS Dealer Service*
26 *Corp.*, 77 F.3d 1353 (11th Cir. 1996) (adopting "fraudulent misjoinder" theory). The Ninth
27 Circuit has not adopted the doctrine of fraudulent misjoinder and there are serious doubts
28 whether the doctrine is well-founded. But even if the doctrine is valid, it is not clear that the

Shamans and Kennedy-Manspeakers have been misjoined.

"Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action." E. Farish Percy, *Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine*, Harv. 29 Harv. J.L. & Pub. Pol'y 569, 572 (2006). Courts have not yet defined the contours of this doctrine and it "is applied inconsistently by the district courts." *Id.* at 574. While some district courts in the Ninth Circuit have adopted the theory, the Ninth Circuit has not yet weighed in on the issue. *See, e.g.*, *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) (severing and remanding claims under fraudulent misjoinder theory but observing "Ninth Circuit has not addressed this issue"). Given the complexities inherent in assessing the proper joinder of plaintiffs, there is some doubt whether the Ninth Circuit will recognize the doctrine of fraudulent misjoinder and, if it does, what the test for determining fraudulent misjoinder will be. *See Osborn v. Metro Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004) (rejecting fraudulent misjoinder rule and observing "better rule" would require party seek severance in state court and then remove severed action if diversity jurisdiction existed); *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842, 851 (S.D. Ill. 2006) ("In the Court's view, whether viable state-law claims have been misjoined–even 'egregiously' misjoined–is a matter to be resolved by a state court."). Absent direction from the Ninth Circuit, this Court is uncomfortable adopting a doctrine that will inevitably lead to "more procedural complexity." *Osborn*, 341 F. Supp. 2d at 1127. But assuming the doctrine is valid, it is not applicable to this case.

Despite disagreement[2] regarding the contours of the doctrine, courts generally agree fraudulent misjoinder does not exist when the plaintiffs' claims arise "out of the same

---

[2] The disagreements include whether "egregious misjoinder, as opposed to mere misjoinder, constitutes fraudulent misjoinder" and whether the state or federal test for misjoinder should apply. E. Farish Percy, *Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine*, 29 Harv. J.L. & Pub. Pol'y 569, 608 (2006).

- 6 -

transaction, occurrence, or series of transactions or occurrences" and give rise to a common question of law or fact. Fed. R. Civ. P. 20. In this case, there is no doubt that the claims by the Shamans and the Kennedy-Manspeakers give rise to common questions of law and fact. At the very least, the Shamans' and Kennedy-Manspeakers' claims have substantial overlap regarding causation questions. It also appears the Shamans' and Kennedy-Manspeaker's claims arguably arise from the same series of transactions or occurrences, *i.e.* the installation and use of AMS products in Intel facilities. Given these facts, it is at least debatable whether Plaintiffs' claims have been misjoined. Fraudulent misjoinder does not exist when the joinder was debatable. *See Conk v. Richards & O'Niel, LLP*, 77 F. Supp. 2d 956, 971 (S.D. Ind. 1999) (fraudulent misjoinder standard is whether there is a "reasonable possibility that a state court would find [the plaintiffs' claims] properly joined").

Accordingly,

**IT IS ORDERED** the Motion to Remand (Doc. 24) is **GRANTED**.

DATED this 30th day of November, 2010.

Roslyn O. Silver
United States District Judge